IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RODOLFO MEDRANO #999501 | § | |
| VS. | § | CIVIL ACTION NO. 9:11CV70 |
| RICK THALER, ET AL | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Rodolfo Medrano, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was assigned to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

## I. BACKGROUND

The complaint was filed on April 13, 2011. Plaintiff is a death row inmate confined at the Polunsky Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ). He originally filed this lawsuit purporting to seek a class action, naming TDCJ's Director, Executive Director, and individual members of the Texas Board of Criminal Justice, as Defendants. He claims that the TDCJ general population inmates are usually allowed access to telephone privileges, enabling them to make phone calls to individuals on their visitation lists for 15 minutes a day, up to 120 minutes a month pursuant to the passage of Senate Bill 1580. However, he contends, Defendants "purposely required prisoners to have full-time job or school assignments to receive regular telephone access," Complaint at 7-8, which general population prisoners may be able to obtain but which is withheld from death row prisoners. Instead, death row inmates are only

1

allowed access to telephones according to the pre-Senate Bill 1580 plan, which only permits one, five-minute phone call every 90 days. Therefore, he alleges, his (and the putative class's) constitutional rights are being violated under the First Amendment, the Fifth Amendment right against double jeopardy, the Sixth Amendment right to communicate with counsel and the Fourteenth Amendment protection against disparate treatment. *Id*. at 12-13. He seeks declaratory and presumably injunctive relief, costs and attorney fees and other relief. *Id*. at 13.

On April 25, 2011, the Court issued an Order to Show Cause why the lawsuit should not be severed into individual lawsuits or to rely on the outcome of a single lawsuit by one plaintiff. *See* docket entry #3. Plaintiff elected to proceed with himself and one other inmate, Tony Ford, who was severed into a separate lawsuit.[1]

On January 19, 2012, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Office representative Philip Brooks and Warden William Motal testified under oath about prison policies and information contained in the Plaintiff's prison records.

On March 5, 2012, pursuant to the Court's Order, Defendants filed an answer to the

---

[1] At that time, the parties had not yet consented to Magistrate Judge jurisdiction over this case in all matters, pursuant to 28 U.S.C. § 636(c). Therefore, final severance in lieu of a class action was made pursuant to a Report and Recommendation by the undersigned, adopted by the then-assigned District Judge.

complaint (docket entry #31), denying Plaintiff's allegations and raising certain defenses including that Plaintiff had failed to exhaust his administrative remedies prior to filing the lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *See* Answer at 1.

Thereafter, on May 3, 2012, Defendants filed a Motion for Summary Judgment For Failure to Exhaust Administrative Remedies (MSJ) (docket entry #35). Plaintiff did not file a response to the MSJ, but on May 18, 2012, filed a Plaintiff's Memorandum in Support of Motion for Voluntary Dismissal (docket entry #37).[2] In that motion, Plaintiff admitted that he had not exhausted his administrative remedies and sought dismissal without prejudice in order to do so. However, before the Court acted on either of these two motions, Plaintiff filed a new Motion to Set Aside Voluntary Dismissal of Original 1983 Complaint (docket entry #38), on July 20, 2012. In that motion, Plaintiff asserts that he filed Step 1 and Step 2 grievances in May and June 2012 addressing the claims in his original complaint once he became aware he had not exhausted. Therefore, pursuant to Fed. R. Civ. P. 60(b), he sought to set aside his motion to dismiss without prejudice and allow the above-captioned lawsuit to proceed. Defendants then filed a Response in Opposition (docket entry #39) to the Motion to Set Aside, arguing that even if Plaintiff had purportedly exhausted the claims in his complaint as he claimed, it was nonetheless ineffective because exhaustion must occur *before* a lawsuit is filed.

## II.    STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary

---

[2] Ordinarily, when a non-movant does not file an opposition to a motion, including a dispositive motion, the Court may assume the non-movant has no opposition to it. *See* E.D. Tex. Local R. CV-7(d). In this case, Plaintiff clearly was reacting to Defendants' MSJ when he filed his Motion to Voluntarily Dismiss, attempting to avoid the exhaustion claim. Therefore, the Court will not simply assume non-opposition.

judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (quoting Fed.R.Civ.P. 56(a)). The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id*. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The court resolves factual controversies for

purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When the moving party has carried its burden under Rule 56(c),[3] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

Furthermore, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*,

---

[3] The predecessor to the current Rule 56(a).

494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

### III. DISCUSSION AND ANALYSIS

Defendants assert that Plaintiff has failed to exhaust his administrative remedies with regard to the claims as enumerated in his complaint. In support of this assertion, Defendants have submitted as summary judgment evidence an array of Plaintiff's grievances spanning the time from September 2005 to December 2011, certified under the Business Records Affidavit of the Manager, Offender Grievance, TDCJ. *See* MSJ Ex. A.

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Later, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id*. at 83 (which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)[,]" quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.), *cert. denied*, 537 U.S. 949, 123 S. Ct. 414, 154 L. Ed. 2d 293 (2002)). Most recently, the Supreme Court stated in *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), that

"[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." However, "failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. Subsequently, the Fifth Circuit added that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 388-89 (5th Cir. 2008) (per curiam). Here, Defendants affirmatively plead failure to exhaust in their answer and the MSJ.

The Fifth Circuit has described the TDCJ grievance process:

The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level. This court has previously held that a prisoner must pursue a grievance through both steps for it to be considered exhausted.

*See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). The TDCJ grievance procedure requires an inmate to "be very specific about your grievance or your problem." *Id*. That is, the grievances must contain specific facts, but not "legal words or conclusions." *Id*. These facts must give "prison officials 'fair notice' of the problem that will form the basis of the prisoner's suit." *Id*. at 516. However, a prisoner "need not present legal theories in his grievances." *Id*. at 517 (citing *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003)).

Here, as noted above, Plaintiff asserts in his complaint that TDCJ inmate telephone privileges are based on individual participation in work or educational programs. Complaint at 7-8. Because he allegedly is not allowed such participation as a death row inmate, he contends that he is denied

7

the same telephone access achieved by those who are allowed job or school opportunities. Therefore, he contends, his constitutional rights are being violated under the First Amendment, the Fifth Amendment right against double jeopardy, the Sixth Amendment right to communicate with counsel and the Fourteenth Amendment protection against disparate treatment. Complaint at 12-13. The question is whether these claims, stripped of the legal theories enunciated in the complaint, are factually represented in a set of Step 1 and Step 2 sufficiently-detailed fact based grievances filed by the Plaintiff prior to initiating this lawsuit.

The Court has reviewed each of the grievances in the exhibit propounded by Defendants, which represents all of Plaintiff's grievances filed between September 2005 and December 2011. There is one set of Step 1 and corresponding Step 2 grievances that address the issue of telephone access by death row prisoners. *See* MSJ Ex. A at Bates nos. 000046-000049 (PageID #149-52).[4]

Plaintiff's Step 1 grievance in this regard was signed and dated on March 28, 2010, and related to an incident that occurred on March 13, 2010. There, Plaintiff stated:

[Death Row] is allowed one phone call every 90 days.

My last phone call was on [November 14, 2009]. I have been eligible since February 2010, but was not given a call until [March 13, 2010]. No one answered my attempt, so Sgt. Valentine said "we" would try again Sunday (3-14). It has been 3 Sundays since my first attempt. Sgt. Valentine said I get 3 chances until I have to resubmit a request.

This one call every 90 days is unfair, because it will take more than 90 days for a call, as it is over 90 days for me, while I have been Level I with no cases and abiding by all the rules. It takes too long to be given a call and it is only 5 minutes. TDCJ has a new phone system that can be used by [Death Row] too, which would/could give us the 90 day phone call promptly without delays.

---

[4] The PageID # is sequentially imprinted on each page electronically filed on a docket, beginning with the first page of the first document. This provides an alternative means of positive identification and citation.

*See* Ex. A at Bates no. 000048 (PageID #151). The action he requested to resolve this complaint stated:

> [Death Row] be allowed to use the new TDCJ phone system as general population offenders; or be given more frequent and longer phone calls, to be equal to [General Population] or close to their call amounts and time allowed.

*See id*. at Bates no. 000049 (PageID #152). The grievance response, dated May 24, 2010, stated:

> An investigation has been conducted into your claim. The Sergeant in question was contacted to address your concerns and he stated phone calls are only made on Sundays; only if staff is available for escort. Offender phone calls are at the discretion of the shift supervisor. No further action is warranted in this action.

*Id*. Plaintiff then filed a Step 2 grievance signed and dated May 25, 2010, stating:

> No investigation was done, as I was never spoken to about this grievance. The Step 1 response states, "phone calls are made on Sundays," which means there should be plenty of staff available. There are no recreations on Sundays for Death Row, nor is there any visitations, meaning staff normally working death row along with escorting staff is available to conduct offender phone calls in a reasonable amount of time. Taking 3 to 5 months to get a phone call is not reasonable and violates the [F]irst [A]mendment to the U.S. Constitution.
>
> If phones from the new TDCJ Offender Telephone System, were placed in the day room areas, where they should be, all offender phone calls would be conducted in a reasonable amount of time, since the offender would be the one responsible for the call not staff. This would be a solution to the problem of long waits for my five minute phone call every 90+ days, which is unfair when compared to [General Population] offenders, while TDCJ has the Offender Telephone System available.

*See id*. at Bates no. 000046 (PageID #149). The grievance response stated:

> Your Step 2 grievance has been investigated by this office. Telephone calls are conducted per policy and as security issues permit. Your complaint is noted. No further investigation is warranted by this office.

*See id*. at Bates no. 000047 (PageID # 150).

The first thing that is apparent is that Plaintiff did not include anything in his grievances about inmate telephone access being allegedly tied to the ability to perform work or educational

9

opportunities. That appears to be the crux of the remainder of his claims. Absent fair notice to prison officials at Step 1 and the State at Step 2 that he - and others in his position, to the extent that he initiated this lawsuit as a purported class action - cannot earn the right to obtain telephone privileges, he did not exhaust this fact-based claim before filing his lawsuit.

As to the alleged constitutional violations stated in his complaint, he was not required to articulate specific legal theories in his grievances. That he did so at one point in his Step 2 grievance (alleging a violation of his First Amendment rights) is permissible, if unnecessary. However, although he alleged a "First Amendment" violation, he did not state any facts of what that violation was. Presumably, he referred to freedom of speech; however, he did not say so in that Step 2 grievance, nor did he allude to it at all in his Step 1 grievance.

With regard to his claims of a "double jeopardy" violation and blocked access to counsel, he alleged no factual basis for either of these allegations in either his Step 1 or Step 2 grievance. Further, as to the former, "The Supreme Court has stated that the double jeopardy clause provides protection from 'multiple punishments for the same offense.'" *United States v. Bigelow*, 897 F.2d 160, 161 (5th Cir. 1990) (quoting *Albernaz v. United States*, 450 U.S. 333, 343-44, 101 S. Ct. 1137, 1145, 67 L. Ed. 2d 275 (1981)). Plaintiff has alleged no facts in his grievances how the denial of telephone privileges equates to double jeopardy. As to the latter, Plaintiff has not even alleged in his grievances that he is represented by counsel in any respect, such that he is denied effective communication with counsel.

Finally, with regard to Plaintiff's allegation of disparate treatment under the Fourteenth Amendment, he simply alleged in his grievances that his lack of telephone access is "unfair" when compared to that of general population inmates. *See* MSJ Ex. A at Bates nos. 000046, 000048 (Step

1 alleging "one call every 90 days is unfair"). However, this claim is closely tied to Plaintiff's allegation that general population inmates are allowed to achieve access by working or going to school. That fact appears nowhere in his Step 1 and Step 2 grievances.

Moreover, it appears that Plaintiff himself agrees that he did not satisfactorily exhaust his administrative remedies through the grievance process. His Motion to Voluntarily Dismiss, followed by his Motion to Set Aside, explicitly state that he filed those motions in order to exhaust these (or similar) issues, though he did not submit actual copies of his newly-filed grievances for the Court to compare. Such an admission is a powerful statement of itself. However, notwithstanding Plaintiff's effort to exhaust, it is too late. He must have exhausted his claims *before* filing his lawsuit, not after. *Booth*, 532 U.S. at 741; *Woodford*, 548 U.S. at 88; *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *overruled by implication on other grounds by Jones v. Bock*, 549 U.S. 199.

Therefore, there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *VRV Development L.P.*, 630 F.3d at 455; Fed. R. Civ. P. 56(a). Thus, Plaintiff's instant lawsuit must be dismissed as unexhausted.

Dismissal for failure to exhaust before filing a lawsuit is in effect a dismissal for failure to state a claim upon which relief may be granted. *Emmett v. Ebner*, 423 Fed. Appx. 492, 493-94 (5th Cir. 2011) (per curiam). Therefore, such a dismissal should count as a "strike" pursuant to 28 U.S.C. § 1915A(b)(1). Additionally, Plaintiff is proceeding *in forma pauperis* in this matter. Dismissal therefore should be with prejudice "for purposes of proceeding in an *in forma pauperis* proceeding." *Underwood*, 151 F.3d at 296. Effectively, that leaves Plaintiff an option of re-filing his lawsuit if he has actually exhausted his claims as he apparently believes he has now done, but he will not be

allowed to proceed *in forma pauperis* and must file a fee-paid complaint if he wishes to proceed. *Id*. It is accordingly

**ORDERED** that Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (docket entry #35) is hereby **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion to Voluntarily Dismiss (docket entry #37) and Motion to Set Aside Voluntary Dismissal (docket entry #38) are hereby **DENIED** as **MOOT**. It is finally

**ORDERED** that Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE** for purposes of proceeding *in forma pauperis* and pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. The Clerk shall deliver a copy of this Memorandum Opinion and Order to the Three Strikes Coordinator for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **10** day of **August, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE